IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TIMOTHY J. ROBINSON | § § | |
| Plaintiff, | § § | Case No.: 4:12-cv-01302 |
| vs. | § § | |
| CAROLYN W. COLVIN[1], COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION | § § § | |
| Defendant. | § § § | |

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[2] in this social security appeal is the Defendant's Cross Motion for Summary Judgment and Memorandum in Support (Document Nos. 9 & 10) and Plaintiff's Motion for Summary Judgment and Memorandum in Support (Document Nos. 7 & 8) and Defendant's response to Plaintiff's Motion for Summary Judgment. (Document No. 12). After considering the motions for summary judgment, the administrative record, the written decision of the Administrative Law Judge, and the applicable law, The Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is DENIED, Defendant's Cross Motion is GRANTED, and the decision of the Commissioner of the Social Security Administration is AFFIRMED.

---

[1] Carolyn W. Colvin became the acting Commissioner of the Social Security Administration on February 14, 2013. She is substituted for Michael J. Astrue as the defendant in this action.
[2] On October 8, 2012 this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. (Document No. 14).

## I. Introduction

Plaintiff Timothy Joseph Robinson ("Robinson") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits. Robinson argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") decision, and the ALJ, Janis Estrada, committed errors of law when she found that Robinson was not disabled. Robinson argues that he has been disabled since March 25, 2009, due to bipolar II disorder, seizures, major depression, anxiety, panic attacks, and blackouts. According to Robinson, the ALJ failed to properly weigh the opinions of his treating psychiatrist, and that of an examining consulting psychologist, and instead relied on opinions of non-examining disability determination unit physicians, in formulating his residual functional capacity. He further argues that the ALJ failed to adequately evaluate his credibility. Robinson seeks an order reversing the ALJ's decision and awarding of benefits, or in the alternative, remanding his claim for further consideration. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Robinson was not disabled, that the decision comports with applicable law, and that the decision should, therefore, be affirmed.

## II. Administrative Proceeding

On August 28, 2009, Robinson applied for disability insurance benefits, claiming an inability to work due to a disability alleged to begin March 25, 2009. (Tr. 130-131). The Social Security Administration denied his application at the initial and reconsideration stages. After that, Robinson requested a hearing before the ALJ. The Social Security Administration granted

his request and the ALJ, Janis Estrada, held a hearing on December 8, 2010, at which Robinson's claims were considered *de novo*. On January 7, 2011, the ALJ issued a decision finding Robinson not disabled. (Tr. 16-27).

Robinson sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416. 1470. After considering Robinson's contentions in light of the applicable regulations and evidence, the Appeals Council, on February 24, 2012, denied the request. (Tr. 1-6). After this, denial the ALJ's findings and decision became final.

Robinson has filed a timely appeal of the ALJ's decision. Both the Commissioner and Robinson have filed Motion for Summary Judgment (Document Nos. 9 & 7). This appeal is now ripe for ruling.

## III. Standard for Review of Agency Decision

The court's review of denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with legal standards." *Jones v. Apfel*, 174 F. 3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon pleadings and transcript, "affirming, modifying, or reversing the decision of the

Commissioner of Social Security, with or without remanding the cause for a hearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F. 2d 340, 343 (5th Cir. 1988); *see also Jones*, *174 F.3d at 693; Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F. 2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only when there is a 'conspicuous absence of credible choice' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV. Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson*, 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [H]e is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A). The mere presence of impairment is not enough to establish that one is suffering from disability. Rather, a claimant is disabled only if he is "incapable of engaging in *any* substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments [he] will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558 n.2 (5th Cir. 1995); *Wren v. Sullivan*. 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *Mcqueen v. Apfel*,

168 F.3d 152, 154 (5th Cir. 1999). If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 564.

Here, the ALJ determined that Robinson was not disabled at step 1, because he had engaged in substantial gainful activity since March 25, 2009, but proceeded with the remaining steps in the five-step sequential process and subsequently determined Robinson was not disabled at step 4. In particular, the ALJ determined that Robinson had engaged in substantial gainful activity since the alleged onset date (step one)[3]; that Robinson's bipolar disorder, history of seizure disorder, asthma, hypothyroidism, hypertension (HTN), obstructive sleep apnea (OSA) and a history of alcohol abuse were severe impairments (step 2); that none of Robinson's impairments or combination of impairments met or equaled an impairment listed in Appendix 1 of the Regulations (step 3); that Robinson had the Residual Functional Capacity ("RFC") to perform the full range of work limited to the extent that Robinson avoid driving and exposure to unprotected heights, open water, open fire and dangerous and moving machinery; and due to asthma, work in a controlled clean air environment with air conditioning. The ALJ further found that Robinson's mental RFC allowed him to perform his past work because he could understand, remember, and carry out detailed, but not complex, instructions and could make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a work setting. Therefore, Robinson could perform his past relevant work as a mechanical

---

[3] Robinson's earnings record shows he received earnings in 2009 and 2010. (Tr. 132-140)  He was employed by AP Total Source Inc. for the 1st quarter of 2009 and for the remaining quarters of 2009 and 2010 received unemployment insurance benefits. *Id.*

drafter (step 4). In this appeal, the court must determine whether substantial evidence supports the ALJ's decision, and whether the ALJ used the correct legal standards in arriving at that conclusion. In this regard, Robinson maintains that the ALJ failed to properly weigh the medical evidence, particularly the opinions of Dr. St. John and Dr. Adams; that the ALJ failed to adequately evaluate Mr. Robinson's credibility; and that the ALJ relied upon flawed vocational expert testimony.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain and disability as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren*, 925 F.2d at 126.

## V. Discussion

### a. Objective Medical Evidence

The objective medical evidence shows that Robinson suffers from severe combination of impairments, including bipolar disorder, a history of seizure disorder, asthma, hypothyroidism, hypertension (HTN), obstructive sleep apnea (OSA), and a history of alcohol abuse.

On March 18, 2009, Robinson attempted to commit suicide and voluntarily admitted himself to Texas West Oaks Hospital. (Tr. 212). Robinson reported a history of bipolar disorder and stated that he had been treated by Martha St. John, MD, since August 18, 2007. (Tr. 239). At admittance, he reported symptoms of insomnia, racing thoughts, difficulty focusing, dysphoria, and a labile mood. (Tr. 328). Robinson also admitted to alcohol use prior to his voluntary admittance. *Id.* He was discharged on March 22, 2009. (Tr. 327-377). Discharge notes indicate

that he initially minimized his use of alcohol, but during hospitalization, it "became evident [that] it is a problem." (Tr. 212). At discharge his diagnosis included bipolar disorder, most recent episode mixed with psychotic features and alcohol abuse. (Tr. 211). His assessed GAF score was 55, which indicated moderate difficulty in social, occupational, or school functioning. *Id.*

The records indicate Dr. St. John has been regularly treating Robinson for bipolar disorder since July 18, 2007. (Tr. 239-285). Reports from July 2007 to March 2009 indicate little change in Robinson's behavior, but in March of 2009 Robinson's symptoms began to worsen. Treatment records received from Dr. St. John, dated March 9, 2009, indicate that prior to Robinson's hospitalization he was having increased symptoms and struggling "at his new job of 1 month." (Tr. 258). The mental status examination given on this date indicates that Robinson's cognitive functioning appeared to have been unchanged; insight into his illness was normal and his "social judgment is fair." (Tr. 258). A report from Dr. St. John dated March 27, 2009, five days after Robinson's discharge from West Oaks Hospital, indicated Robinson's health appeared to have improved after his hospitalization. Robinson had joined a gym, his insight into his illness was normal, his social judgment was intact, and the treatment plan consisted of continuing his prescribed medications. (Tr. 256). On April 24, 2009, Robinson reported worsening symptoms of racing thoughts, insomnia, and depressed mood. He also reported that he had been "laid off from his job and plans to apply for disability." (Tr. 254). He reported that his mood was anxious and that he fidgeted and shook his legs frequently. However, his Mental Status Examination was otherwise unchanged from previous visits. *Id.* Dr. St. John completed a Psychiatric/Psychological Impairment Questionnaire dated June 21, 2009. (Tr. 240-247). Dr. St. John diagnosed Robinson with Bipolar I disorder, most recent episode mixed and his GAF was

50. (Tr. 240). Dr. St. John reported Robinson's primary symptoms to be insomnia, racing thoughts, crying spells, intrusive anger, aggressive thoughts and agitation. Although Robinson reported negative symptoms in June of 2009, by July of 2009 his symptoms began to improve. (Tr. 248-252). On July 24, 2009, Robinson reported that he was doing well and his racing thoughts "have basically dissipated" and "panic attacks have ceased." (Tr. 248). His MSE revealed "no serious mental status abnormalities" and a "normal attention span is in evidence and there are no signs of hyperactivity." *Id.* On September 30, 2009, Robinson reported his condition had worsened and that his depression had increased. (Tr. 322). However, Robinson indicated that the panic attacks had remained "remitted." *Id.* He reported that he had resumed taking the medication, Keppra, for seizure prophylaxis and Dr. St. John continued him on the same medication regimen. *Id.*

In October of 2009, at the behest of DDS, Robinson underwent a consultative psychological evaluation performed by Lowell Adams, Ph.D. (Tr. 286—91). Robinson's chief complaints were of memory loss, fatigue, panic attacks, auditory hallucinations, depression, racing thoughts and suicidal thoughts. (Tr. 286). Robinson reported that he maintained supportive relationships with his family, and that he has infrequent contact with a few friends outside his family. (Tr. 288). His social activities were reported to be "extremely limited." *Id.* Dr. Adams reported that "during the evaluation, there was no florid evidence of thought disorder, and there was no evidence of looseness of association circumstantially or tangentially." *Id.* Dr. Adams used the Digit Span subtest of the Weschler Intelligence Scale to assess Robinson's short-term auditory memory. The test indicated a "severe deficit in short-term auditory memory skills." (Tr. 289). Robinson also had "notable difficulty with delayed recall." *Id.* However, Robinson had no problems with concentration, and Dr. Adams reported his "overall

concentration showed no significant signs of impairment." *Id.* Robinson was able to count backwards from 20 to 12 without difficulty and completed serial 3's from 100 backwards without difficulty. *Id.* Dr. Adams assessed Robinson's GAF score at 45.

In November 2009, Robinson underwent a consultative physical examination performed by William Culver, MD.  (Tr. 292-96) The entire physical examination was within normal limits, and there was "no evidence of any impairment or disability." (Tr. 295).

On December 8, 2009, DDS Physician John Ferguson, Ph.D. reviewed Robinson's records and completed a Psychiatric Review Technique (Tr. 297-310). Dr. Ferguson noted that Robinson had Bipolar I disorder, most recent episode mixed. (Tr. 300). In rating Robinson's functional limitations, Dr. Ferguson found he had moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and only one or two episodes of decompensation of extended duration. (Tr. 307). Dr. Ferguson also completed a Mental Residual Functional Capacity Assessment on December 8, 2009. (Tr. 311-14). He did not report Robinson as being markedly limited in any category, and he only found him to be moderately limited in six of twenty categories. *Id.*

On December 9, 2009, James Wright, MD, completed an analysis of Robinson's history of seizures. (Tr. 315) Dr. Wright determined that due to Robinson's history of seizures he "should avoid unprotected heights, open flames, and moving machinery." *Id.* He also recorded that Robinson was no longer taking any medication for his seizures and it reported it to be a non-severe impairment. *Id.*

On March 30, 2010, Robinson returned to Dr. St. John for treatment and reported that he had moved to Colorado from Houston for three months from November 2009 to February 2010.

(Tr. t). Robinson reported hat his condition was unchanged and that he was hearing voices. *Id.* His panic attacks remained remitted and he had only taken one Klonopin in the past week. *Id.* Dr. St. John recorded that his cognitive functioning appeared to be unchanged from previous visits, his insight into his illness was normal, and that his social judgment was intact. *Id.* On April 29, 2010, Robinson reported that he was doing worse and had been unable to sleep more than three hours a night. (Tr. 380). However, panic attacks remained remitted and he was only taking his Klonopin "rarely." *Id.* Dr. St. John again reported his cognitive functioning as unchanged. *Id.* In June of 2010, Robinson reported that his racing thoughts had slowed slightly and that his panic attacks remained in remission. (Tr. 384-87). Dr. St. John again reported that his cognitive functioning was unchanged and that his social judgment was "intact." *Id.* On July 26, 2010, Robinson reported to Dr. St. John that he "is somewhat better." (Tr. 391). He also reported that he was doing laundry, cleaning the house and doing some grocery shopping. *Id.* In August of 2010, Robinson reported that his condition was again worse. However, Dr. St. John's mental status report did not indicate any significant change in his condition. (Tr. 389).

Dr. St. John completed another Psychiatric/Psychological Impairment Questionnaire on September 23, 2010. (Tr. 416-424). Dr. St. John again recorded Robinson had Bipolar 1 disorder and assessed his GAF to be 50. (Tr. 417). Dr. St. John also recorded several of the mental activities assessed by this exam as not ratable on available evidence. (Tr. 420-422).

In November of 2010, Lindsay Ramer, MD, treated Robinson and completed a progress report. (Tr. 425-426). Dr. Ramer diagnosed Robinson with Bipolar I disorder; however, she found he was fully oriented and that his "short and long term memory are intact, as is ability to abstract and do arithmetic calculations." (Tr. 425). Dr. Ramer adjusted Robinson's medication and recommended he find a support group that would be a good fit with his condition. (Tr. 426).

Upon this record, substantial evidence supports the ALJ's findings that, while Robinson's impairments could be considered severe at step two, the impairments did not meet or equal in severity a listed impairment. Additionally, substantial evidence supports the ALJ's RFC determination. The objective medical evidence therefore supports the ALJ's decision.

### b. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Shweiker*, 653 F.2d 997, 10001 (5th Cir. 1981); *see also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses should be accorded great weight in determining disability."). In addition, a specialist's opinion is generally to be accorded more weight than a non-specialist's opinion. *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1990). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981). Further, regardless of the opinions, diagnoses, and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting *Moore*, 919 F.2d at 905).

There are several medical opinions in the record, including the opinions of Robinson's treating physician, the opinions of medical experts who reviewed Robinson's medical records, and the opinions of physicians who consultatively examined Robinson.

Dr. St. John, Robinson's treating physician, wrote a "To Whom it May Concern" letter setting forth her medical opinion of Robinson's impairment and its affect on his ability to work. The letter, dated September 9, 2009, states in pertinent part, "At the present time, I do not believe Mr. Robinson is capable of sustaining full time work." (Tr. 317). Dr. St. John also completed a Psychiatric/Psychological Impairment Questionnaire (form), dated July 21, 2009, containing her subjective medical opinion of Robinson's condition. (Tr. 240-247). Dr. St. John wrote very little of her own comments on the questionnaire, and relied heavily on checking the boxes provided to complete her report. *Id.* Dr. St. John reported that Robinson was "incapable of even low stress" in the work place but did not explain the basis for her conclusions. (Tr. 246). In addition, Dr. St. John checked the "markedly limited" category for several of the questions, but also checked the "not ratable on available evidence" category for two of the twenty questions for which it was available. (Tr. 243-245). Dr. St. John also chose not to make any additional comments at the end of the questionnaire, leaving the bulk of her report to check marks in response to the standard questions asked by the form. (Tr. 240-247).

The ALJ considered the opinion of Dr. St. John but did not afford it controlling weight. (Tr. 26-27). Although a treating physician's opinion should be given considerable weight, good cause may permit an ALJ to discount the weight of a treating medical source relative to other experts when the medical source's opinion is otherwise unsupported by evidence. *See Newton*, *209* F.3d at 455-456; 20 C.F.R. § 404.1527(d)(3) (supportability is a factor for the ALJ to consider when she weighs a treating source's opinion). Also, statements that are brief and conclusory provide good cause for declining to follow a treating physician's opinion. *Legget v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Dr. St. John used brief and conclusory statements in stating her subjective medical opinion, and her medical opinion is otherwise unsupported by the

evidence. For example, in the questionnaire completed on September 23, 2010, Dr. St. John listed recurring panic attacks as a major symptom of Robinson's Bipolar disorder. (Tr. 417-423). However, Dr. St. John frequently reported that Robinson's panic attacks remained remitted. In particular, patient reports for Robinson's visits on July, 24, 2009, September, 30, 2009, March 30, 2010, April 29, 2010, May 20, 2010, June 11, 2010, and June 25, 2010 all contain language stating that Robinson's panic attacks are either remitted or under control. (Tr. 248-394). Also, Dr. St. John listed in the same questionnaire that Robinson's most severe symptoms were racing thoughts and insomnia. (Tr. 417-423). However, there are several recent patient reports that contain contradicting language. Dr. St. John frequently reported that Robinson's racing thoughts had either slowed or were improving. On July 24, 2009, she wrote that Robinson was "doing fairly well" and reported that his racing thoughts had "basically dissipated" (Tr. 248-249). On June 11, 2010, Dr. St. John recorded that Robinson's racing thoughts had slowed slightly, and on June 25, 2010, she wrote that Robinson had reported his racing thoughts had slowed and he was "hopeful" about this symptom in particular. (Tr. 384-394). On July 6, 2010, Robinson reported to Dr. St. John that he was sleeping better and she recorded he felt he was "gradually improving." (Tr. 391-392). The only time Robinson's symptoms of racing thoughts were reported to worsen was in August of 2010, when he was dealing with illness in his family. (Tr. 389-390). However, when Dr. Ramer later recorded her findings concerning Robinson, she reported no signs of anxiety. (Tr. 425-426). These contradictions and inconsistencies show that the ALJ did not err in the decision to not provide Dr. St. John's opinion controlling weight. Specifically, the ALJ wrote:

> The undersigned finds the doctor's opinion by way of Psychiatric/Psychological Impairment Questionnaire (form) inadequate because the form contains excessive mental activities, which have been rated as "not ratable on available evidence." Doctor St. John reports that her opinion is based upon treatment of the claimant

from July 2007 through August 2010; given that she has treated the claimant for a period of at least 3 years, the number of "not ratable" mental abilities appears unreasonable. In addition, the doctor opines that the severity of the claimant's current symptoms have been ongoing since January 2008. However, despite the alleged ongoing symptoms, the claimant was capable of performing substantial gainful activity in 2008 through at least the alleged onset date of March 2009 as well as the last quarter of 2009 and the first quarter of 2010. His ability to work at substantial gainful activity level during those periods is clearly not consistent with reported disabling mental symptomology. The doctor's treating source opinion is not well supported and inconsistent with other substantial evidence in the case record and is therefore not afforded controlling weight. (SSR 96-2p).

(Tr. 26-27).

In October of 2009, Lowell Adams, Ph.D., consultatively examined Robinson at the behest of DDS. (Tr. 286-290). Dr. Adams opined that Robinson's examination suggested he had "mildly impaired social/practical judgment." (Tr. 290). Dr. Adams also concluded Robinson's "prognosis for occupational and functional adjustment in the near future is poor."

The ALJ afforded no weight to the opinion of Dr. Adams, and did not err in doing so. In order for the ALJ to give deference to a medical opinion it must be more than conclusory and must be supported by clinical and laboratory findings. *Heckler*, 770 F.2d at 485. Dr. Adams opinion was based in large part on Robinson's subjective complaints. (Tr. 286-291). Specifically the ALJ wrote:

As for the opinion evidence, the undersigned affords no weight to the Dr. Adams' opinion that the claimant has serious impairment in social, occupational, or school functioning (GAF score of 45). (Exhibit B3F/5). The doctor's own MSE findings do not support the opinion and the opinion is primarily based quite heavily on the subjective report of symptoms and limitations, which is without supporting objective documents. As such, the doctor's opinion is found less credible and unpersuasive.

(Tr. 26).

Robinson also underwent a consultative physical examination performed by William Culver, MD in November of 2009. (Tr. 293-96). Dr. Culver opined that Robinson did not have

any evidence of disability based on physical structure alone. (Tr. 295). Dr. Culver wrote, "it is my opinion he can perform all of his ADLs and maintain gainful employment without any restrictions. However his primary disability appears to be his bipolar and seizures, which were not apparent on this exam." *Id.*

The ALJ relied heavily upon statements the reevaluations of Dr. John Ferguson, Ph.D, based on his review of Robinson's medical records. He completed both a Psychiatric Review Technique and a Mental Residual Functional Capacity Assessment. (Tr. 297-315). After completing the Psychiatric Review Technique, Dr. Ferguson opined that Robinson's symptoms "do not wholly compromise his ability to function appropriately, effectively, or independently." (Tr. 309). Upon completion of the Mental RFC Assessment, Dr. Ferguson opined that Robinson "can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in work setting." (Tr. 313).

In relying on Dr. Ferguson's opinion, ALJ Estrada writes:

> The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). In reaching this conclusion, the opinion of the State agency psychological consultant has been considered and noted that he has reached the same conclusion (SSR 96-6p). In addition, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairments... In activities of daily living the claimant has moderate restriction. The claimant's depression waxes and wanes and he can perform all aspects of personal hygiene and self-care...at the hearing he testified that he drives a car, uses the computer to check e-mail, do research, and communicate on "face book." He occasionally reads the sports page on a newspaper, and uses a cellular telephone.

(Tr. 23).

The ALJ's reliance on the opinion of Dr. John Ferguson is supported by evidence in the record. Upon this record the ALJ did not err in her assessment of the medical opinions. The

opinions of Dr. Ferguson and Culver support the ALJ's conclusion that Robinson is capable of performing his past work as a mechanical drafter. (Tr. 21-27). The diagnosis and expert opinion factor also supports the ALJ's decision.

### c. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1884, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record. 42 U.S.C. § 423. "Pain constitute[s] a disabling condition under the act only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990) (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment, which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33,35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Robinson testified at the hearing before the ALJ that he believes he "absolutely" cannot work. (Tr. 62). He reported that he can no longer concentrate and is unable to perform the

"calculations" involved in mechanical drafting. (Tr. 62-63). He testified that there are days where he is unable to get out of bed and that he also has extreme manic and depressive states. (Tr. 63-64). He also reported that he always has racing thoughts and often has trouble following a television show. (Tr. 64-65). Robinson also testified that he drives, but does so with great difficulty and limitations. (Tr. 65). He reported he often has intense panic attacks when under pressure and that he intermittently hears voices and sees things. (Tr. 66-67). Robinson testified that he has not worked since the onset of his alleged disability. (Tr. 49). He also admitted he has been receiving unemployment benefits and that he had been applying for jobs in order to continue to receive benefits. (Tr. 48-62). He claimed he was looking for jobs not because he was able to work, but rather because he was trying to satisfy the unemployment benefits requirement. *Id.* Robinson also reported that he does not drink at all and his last drink was two and a half months ago. (Tr. 54). He claimed his admittance to West Oaks Hospital had nothing to do with his drinking problem and that he disagreed with the West Oaks report showing he was also having problems with alcohol abuse. (Tr. 55). Robinson reported that he sometimes tries to do the laundry but it can be "overbearing," that he does not do any grocery shopping, and that he does not do any cooking. (Tr. 57-60).

ALJ Estrada found Robinson's complaints and subjective symptoms not entirely credible. In so doing, the ALJ wrote:

> The claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible…

> The claimant asserts that he has disabling symptoms related to bipolar disorder, i.e., poor concentration, poor memory, poor motivation, racing thoughts, and poor energy. He asserts that he has depression to the degree that he often is unable to get up from his bed, but has not generally received the type of medical treatment one would expect for a disabled individual. For the relevant period under consideration, the claimant was hospitalized in March 2009. Since then he has not required additional hospitalization and treatment has essentially consisted of

medication regimen prescribed by his psychiatrist. The claimant asserts that he has poor coping skills and is unable to deal with "pressure" related to daily activities. However, despite his complaints of ongoing severe symptom even with his medications, the evidence does not even show that counseling or therapy has been recommended as a treatment option.

The claimant asserts that he has panic attacks on a frequent basis, but treatment records received from Dr. St. John dated July 2009 through June 25, 2010 indicate that the "panic attacks remained remitted" (Exhibits B2f/10, B14F/6, 8, 10, 12, 14, 16). In July 2010, he reported that he had 2 "small panic attacks last week", which "passed without intervention" (Exhibit B14F/4). This evidence clearly shows that the claimant does not have panic attacks to the degree that significantly interferes with activities of daily living.

The claimant has provided inconsistent information regarding daily activities. The claimant testified that he does not shop for groceries, clean, or do laundry, but progress notes dated July 2010 indicate that he was doing laundry and cleaning the house, shopping for groceries, and makes sandwiches (Exhibit B14F/4). He testified that he does not drink "at all," but indicated that he last drank alcohol 2 months prior to his hearing. As mentioned earlier, the record reflects work activity after the alleged onset date. That work activity constitutes disqualifying substantial gainful activity and clearly indicates that the claimant's daily activities have been greater than the claimant has generally reported. The claimant's inconsistent statements render his alleged symptoms and limitations less than fully credible.

With his application and receipt of unemployment insurance benefits, the claimant is aware that he holds himself out to be ready, willing, and able to work. This assertion is inconsistent his allegations of being disabled and further detracts from his credibility.

(Tr. 25,26).

Credibility determinations, such as made by the ALJ in connection with Robinson's testimony about his limitations, are within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232,237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), cert. denied, 514 U.S. 1120 (1995). Because the ALJ made and supported his credibility determination with references to medical evidence and Robinson's testimony about his daily activities, and because the ALJ did not rely

on any improper factors, the subjective evidence factor also weighs in favor of the ALJ's decision.

### d.  Age, Education, and Work History

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d)(2)(a).

The record shows Robinson was 44 years old at the time of the administrative hearing, has an Associates degree in drafting, and has performed past relevant work as a mechanical drafter. (Tr. 46-69). Based on the ALJ's conclusion that Robinson did not have exertional restrictions on his ability to work, despite having some non-exertional restrictions, the ALJ questioned a vocational expert, Karen E. Nielsen, Ph.D, about Robinson's ability to perform his past relevant work as a mechanical drafter.

> Q. Okay. All right. Please assume the following hypothetical individual who has the same vocational profile as the claimant, that is the same age, education and past relevant work experience.  And further assume that such individual has a history of seizure disorder which is now resolved.  He has an ongoing mixed bipolar condition.  He has asthma, hypothyroidism, hypertension and sleep apnea, and a history of alcohol abuse, which he said he discontinued alcohol two months prior to the hearing.
>
> Further assume that such a hypothetical individual has no exertional limitations due to a medically determinable impairments, but in view of the history of seizures should have the seizure precautions such as being around moving or dangerous equipment, heights, open fires, water, that sort of thing.  And that, because of the asthma condition, he should be in climate controlled air conditioned-type setting.
>
> And as a result of the mental impairment, such a hypothetical individual would be restricted additionally...[w]ould be relegated to – has the ability to understand,

attend and concentrate for extended periods, accept instructions and respond appropriately to changes in work setting.

Given those physical, non-exertional restrictions, do you have an opinion regarding whether such a hypothetical individual could perform the claimant's past relevant work?

A.   Yes, it would indicate that it is highly detailed and he would be able to perform his past work.

(Tr. 68-73).

Concerning the line of questioning directed toward the Vocational Expert the ALJ wrote:

The vocational expert classified the claimant's past relevant work as a mechanical drafter as skilled work requiring light exertion.  Given a hypothetical individual with the claimant's severe mental and physical impairments, residual functional capacity and past relevant work history, the vocational expert testified that the hypothetical individual would be capable of performing past relevant work as a mechanical drafter as customarily performed.

(Tr. 27).

"A vocational expert is called to testify because of his familiarity with job requirements working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Given the ALJ's reliance on the consulting medical opinion of Dr. Ferguson, the ALJ's credibility determination relative to Robinson's testimony about his pain and limitations, and the properly posed hypothetical questions to the vocational expert based on functional limitations recognized by the ALJ, who testified that Robinson could perform his past work as a mechanical

drafter, substantial evidence supports the ALJ's conclusion that Robinson is not disabled within the meaning of the Act. Thus, this factor also weighs in favor of the ALJ's decision.

## VI. Conclusion and Order

Considering the record as a whole, the undersigned is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts. *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982). As all the relevant factors weigh in support of the ALJ's decision, and as the ALJ used the correct legal standards, the Court

ORDERS that Defendant's Cross Motion for Summary Judgment (Document 9) is GRANTED, the Plaintiff's Motion for Summary Judgment (Document No. 7) is DENIED, and the Commissioner's decision is AFFIRMED.

Signed at Houston, TX this 10th day of July, 2013.

Frances H. Stacy
United States Magistrate Judge